**MACK TRUCKS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 380–84C.**

United States Claims Court.

Aug. 20, 1984.

As Amended Aug. 30, 1984.

Edward J. Shapiro, Washington, D.C., for plaintiff. Thomas L. Patten, William A. Long, and Latham, Watkins & Hills, Washington, D.C., of counsel.

Victor B. Maddox, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant. Mark E. Dennett, United States Postal Service, Washington, D.C., of counsel.

## MEMORANDUM ORDER

MAYER, Judge.

Plaintiff Mack Trucks, Inc., brought this suit on July 26, 1984, to restrain and enjoin award of a United States Postal Service (Postal Service) contract. After a hearing on July 27, 1984, the court ordered that consideration of plaintiff's application for a temporary restraining order be deferred because defendant represented it would withhold award of the contract until August 21, 1984; that plaintiff's request for a permanent injunction be consolidated with its request for a preliminary injunction, *see* RUSCC 65; that the other bidder on the contract be notified of this suit in accordance with RUSCC 14(a)(1); and that the parties follow an expedited briefing schedule. After oral argument on August 17, 1984, the case is now before the court on cross-motions for summary judgment.

### Background

In March of 1984, the Postal Service issued Invitation For Bids No. 104230–84–A–0085 (IFB) for two types of truck tractors. The IFB solicited items to "be manufactured in accordance with USPS specification USPS–T–740E (ESC)" which provides detailed requirements for each type of tractor, including minimum and maximum di-

mensions. Type III tractors, 330 of which are at issue here, must have an in-service length of between 214 and 242 inches.

The IFB required bidders to certify that their vehicles would conform to all aspects of the specification, but it did not require them to submit their proposed in-service dimensions for the tractors until after contract award. The only pertinent measurement requested by the IFB before award was the "unit shipping weight and dimensions" for each type of tractor. However, the IFB listed no specifications with which shipping weight and dimensions must conform.

In a bid submitted on the required IFB form, plaintiff certified that its vehicles would conform to all requirements of the specification and designated an overall shipping length of 260 inches for its Type III tractors. It did not state the in-service vehicle length or any other in-service dimensions in its bid. When bids were opened, it was the low aggregate bidder. The only other offer received, from Weber's White Trucks, Inc., was $550,097 higher.

The day bids were opened, Weber's filed a protest with the Postal Service contracting officer arguing that plaintiff's bid was nonresponsive because it provided a shipping length of 260 inches when the IFB required an in-service length for Type III tractors no greater than 242 inches. Shortly thereafter, the contracting officer asked plaintiff if its shipping length was accurate and was advised that it was not. Corrected figures were given and plaintiff added that this information "would not affect any of the terms, conditions, or pricing as originally submitted." The contracting officer did not ask plaintiff about the in-service length of its vehicles or tell it that a protest had been received from a competitor. In a report on the protest to the Postal Service Office of General Counsel, the contracting officer said, "There exists a possibility that the length specified by Mack Trucks is the shipping length and not the actual length . . .," but recommended that plaintiff's bid

be rejected as nonresponsive, apparently because it was ambiguous.

When informed of Weber's protest and the contracting officer's determination, plaintiff argued to the General Counsel that there was no ambiguity. That office, however, sustained the protest on July 23, 1984. It said, "There are no circumstances contemporaneous with or prior to the bid opening . . . which can be used to explain or justify the variance, . . . [and] the discrepancy in dimensions is of a sufficient magnitude to raise doubt in the mind of the contracting officer of the bidder's intent to conform to the specifications." Plaintiff then filed for an injunction here.

Plaintiff challenges the Postal Service's conclusion that its designation of a permissible shipping length qualifies its promise to comply with the in-service length specification and renders its bid ambiguous, thereby requiring the bid to be rejected as nonresponsive. Defendant responds that the bid was ambiguous. Even if it was not, however, the contracting officer's determination must be upheld because it was within her discretion to conclude that plaintiff's bid was nonresponsive, and there is a rational basis for this determination.

*Discussion*

■ This court has jurisdiction over suits against the United States based on contract claims against the Postal Service. *Butz Engineering Corp. v. United States,* 499 F.2d 619, 628, 204 Ct.Cl. 561 (1974). Every invitation for bids issued by the government, here the Postal Service, carries an implied obligation to fairly and honestly consider all responsive bids submitted. *Space Age Engineering, Inc. v. United States,* 4 Cl.Ct. 739, 741 (1984); *Heyer Products Co. v. United States,* 140 F.Supp. 409, 412, 135 Ct.Cl. 63 (1956). If this obligation is breached, a bidder may seek equitable relief before the underlying contract is awarded. 28 U.S.C. § 1491(a)(3); *Eagle Construction Corp. v. United States,* 4 Cl.Ct. 470, 475 (1984).

■ A bid is responsive if it conforms with the requirements of the solicitation.

*Yachts America, Inc. v. United States,* 3 Cl.Ct. 447, 449 (1983); *Keco Industries, Inc. v. United States,* 492 F.2d 1200, 1203, 203 Ct.Cl. 566 (1974). Responsiveness is determined by the terms of a bid at the time bids are opened. Nonresponsive bids must be rejected to avoid unfairness to other contractors who could have made a better offer if their bid had varied from the terms of the IFB and to prevent the contracting officer from having to compare a bid which deviates from the solicitation with one that is in compliance. "[T]he requirement of responsiveness is designed to avoid a method of awarding government contracts that would be similar to negotiating agreements but which would lack the safeguards present in either that system or in true competitive bidding." *Toyo Menka Kaisha, Ltd. v. United States,* 597 F.2d 1371, 1377, 220 Ct.Cl. 210 (1979). A bidder, therefore, is precluded from modifying a bid after opening which substantially deviates from the IFB. *Albano Cleaners, Inc. v. United States,* 455 F.2d 556, 559, 197 Ct.Cl. 450 (1972). Otherwise, a bidder would be encouraged to submit a nonresponsive bid and engage in the type of bid manipulation that the responsiveness requirement is designed to prevent. 597 F.2d at 1377.

Here, much is made about plaintiff's post-bid opening correction of its stated shipping length in response to the contracting officer's inquiry. But this is irrelevant because plaintiff's position is that its bid was responsive at the time of bid opening. Defendant does not contest that the IFB set out no requirements governing shipping length, so plaintiff's correction affected an essentially discretionary element of the bid and did not change the cost to the Postal Service. The purpose of the shipping dimension estimate was to permit the Postal Service to determine shipping costs of this F.O.B. origin contract to aid in contract cost evaluation. The error affected none of the material terms of the contract and was not an attempt to manipulate the procurement process.

■ The real issue is whether the shipping dimensions could permissibly raise a question about the reliability of plaintiff's commitment to provide vehicles of the specified in-service length, thereby creating an ambiguity in the offer. Though a recurring problem, it appears the courts have not been asked to address it.

Plaintiff argues that its bid was unambiguous because "shipping length" means the length of the vehicle for shipment purposes, not the length of a tractor when in service. The record shows these dimensions commonly differ. Depending on the shipping configuration selected, shipping length may be longer than in-service if protruding brackets with extra tail lights are mounted; it may be shorter if bumpers are removed before transporting them "stacked" or attached lengthwise. Defendant agreed at argument it was reasonable to expect the contracting officer to know about industry shipping practices, but contends plaintiff should have annotated its bid to confirm that its vehicles would comply with the in-service length specification when the shipping length exceeded the maximum in-service length.

Defendant relies heavily on *Starline Enterprises, Inc.,* B–210732, October 12, 1983, 83–2 C.P.D. ¶ 450, holding that a contracting officer properly rejected as ambiguous a bid in which the minimum allowable width of ambulances to be purchased was greater than the proposed shipping width. That case is not helpful here. In contrast with *Star-Line,* where the shipping dimension showed a likely impossibility of conforming with the in-service dimension, this case raises no such concern. The shipping length stated here was neither impermissible under the IFB nor gave rise to an inference that the in-service length could not or would not be met. It is unreasonable to use information provided in response to one clear and unambiguous specification to declare another, different undertaking ambiguous by subjecting it to adverse assumptions or inferences that a fair reading of the bid does not support. There was no ambiguity here. *See generally Kings Point Manufacturing Co.,* B–

**72**

210389, December 14, 1983, 83–2 C.P.D. ¶ 683.

Nevertheless, defendant says that even if the contracting officer was mistaken in finding plaintiff's bid ambiguous, she was authorized to declare it nonresponsive in the exercise of her discretion. The parties have debated the appropriate standard under which the court should review the contracting officer's determination. Plaintiff cites *CACI, Inc.-Federal v. United States,* 719 F.2d 1567, 1573 (Fed.Cir.1983), for the proposition that if the decision was arbitrary or capricious it cannot stand. *See also Space Age Engineering v. United States,* 4 Cl.Ct. at 742. Defendant says the determination must stand unless devoid of any rational basis, assertedly a more stringent test, citing *Essex Electro Engineers v. United States,* 3 Cl.Ct. 277, 280 (1983).

Whatever conceptual and contextual differences there may be between these two articulations, *see generally Tackett & Shaffner, Inc. v. United States,* 633 F.2d 940, 942, 224 Ct.Cl. 530 (1980); *Burroughs Corp. v. United States,* 617 F.2d 590, 597, 223 Ct.Cl. 53 (1980); *Keco Industries, Inc. v. United States,* 492 F.2d at 1203, this case is not the occasion to pursue them. This decision cannot withstand any standard of review. Plaintiff gave the Postal Service precisely and only what it demanded in the solicitation. It had no reason to suppose that by providing shipping information it was inviting the contracting officer to transform that information into in-service specifications. The IFB specifically requested only "shipping dimensions" before award. It was unnecessary for plaintiff to "clarify" that this length was different from in-service length which the IFB did not require to be provided until after award. It is not incumbent on plaintiff to anticipate every erroneous or exogenous assumption a contracting officer might make. *See Max Drill, Inc. v. United States,* 427 F.2d 1233, 1244, 192 Ct.Cl. 608 (1970). Shipping length means shipping length, not in-service length; there is no discretion here to conclude otherwise.

The court does not quarrel with defendant's argument that merely signing a bid confirming one's intention to comply with all specifications cannot render a nonresponsive bid responsive. But that begs the question. If, as the court holds, there was no ambiguity and no discretion to declare the bid nonresponsive, plaintiff's certification of its compliance with all specifications was sufficient. Indeed, under defendant's reasoning Weber's bid would also be deficient. Its stated shipping length was the same as the maximum permissible in-service length. If its vehicles were shipped "stacked," during which bumpers are sometimes removed, the in-service length of Weber's tractors also could be thought understated and the bid ambiguous.

Plaintiff's was the lowest responsive bid and no other deficiencies have been suggested. Award of the contract to another, therefore, would be inconsistent with Postal Contracting Manual § 2–407.1a (1982), the substantive equivalent of 41 U.S.C. § 253(b). Section 2–407.1a requires the contract be awarded to "that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the Postal Service, price and other factors considered...." It would be a refusal of the Postal Service to fairly consider plaintiff's bid in derogation of its implied obligation. Unless injunctive relief is ordered, plaintiff will suffer irreparable harm. An action at law is not an adequate remedy because it can there recover only bid preparation expenses, not anticipated profits. Defendant will not be harmed because it will achieve a saving of $550,097 if it awards the contract to plaintiff. The public interest will also be served thereby, and by insuring the integrity of the procurement process. Weber's, of course, is not entitled to the contract under these circumstances.

Accordingly, it is ORDERED that plaintiff's motion for summary judgment is GRANTED and defendant's cross-motion for summary judgment is DENIED. It is FURTHER ORDERED that William F. Bolger, Postmaster General of the United States, and defendant the United States of

America, its officers, agents and employees, and all other persons in active concert or participation with them, are PERMANENTLY ENJOINED from rejecting the bid submitted by plaintiff Mack Trucks, Inc., in response to IFB No. 104230–84–A–0085, and from awarding the contract which is the subject of the IFB to any source other than Mack Trucks, Inc. Plaintiff will have its costs. *See* 28 U.S.C. § 2412(a); RUSCC 54(d).