**HEWLETT–PACKARD COMPANY,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Sun Microsystems Federal, Inc.,**
**Third Party Intervenor.**

**No. 98–406 C.**

United States Court of Federal Claims.

May 28, 1998.

---

**2.** We do not include the reasons here because of defendant's expressed concern that such information is privileged.

Rand L. Allen, Washington, DC, for plaintiff. Paul F. Khoury, Scott M. McCaleb, and Raymond V. Shepard, III, of counsel.

Frederick W. Claybrook, Jr., Washington, DC, with whom were James J. Regan, John E. McCarthy, Jr., Joseph W.C. Warren, Jeffrey P. Weaver, David S. Cohen, and William F. Savarino, for Intervenor. Stephanie V. Corrao, McLean, Virginia, of counsel.

Jonathan S. Lawlor, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director Jeanne E. Davidson, for defendant. William P. Bennet, and Zoe Strickland, United States Postal Service, Washington, DC, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case presents a question of first impression for the Court of Federal Claims. on April 27, 1998, plaintiff, Hewlett–Packard Company ("HP"), filed this post-award bid protest action under the Tucker Act, 28 U.S.C.A. § 1491(b) (West Supp.1998). Plaintiff contests the United States Postal Service's ("USPS" or "Postal Service") award of a contract for "mid-range scaleable [sic] computer platform equipment" to intervenor, Sun Microsystems Federal, Inc. ("Sun"). Plaintiff seeks declaratory and injunctive relief on the grounds that the USPS violated the terms of the solicitation and failed to follow the USPS Procurement Manual. On May 5, 1998, Sun filed a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(4) of the Rules of the Court of Federal Claims ("RCFC").[1] Sun argues that this court is without power to grant equitable relief in a bid protest action brought against the USPS and, in the alternative, that the court lacks subject matter jurisdiction over the controversy. Neither the parties nor the court have found a case directly addressing the question. During a hearing held May 26,

---

1. Defendant filed a brief in support of Sun's motion on May 11, 1998.

1998, the court denied Sun's motion. This order memorializes that ruling.

## BACKGROUND

On September 30, 1997, the USPS issued Solicitation No. 102590–97–A–0141 ("Solicitation") for its "Mid–Range Scaleable [sic] Computer Platform" procurement. The procurement is designed to create a middle layer of computers between the USPS's mainframe systems and its local servers. The Solicitation contemplated the award of an Indefinite Delivery/Indefinite Quantity contract for standardized scalable midrange computers, software, systems configuration, installation, maintenance, programming, support personnel, and training. The Solicitation specified a base performance period of five years plus four, one-year options. The minimum value of the contract is $3 million and its maximum aggregate value is $500 million. Four bidders, including plaintiff and intervenor, submitted proposals. On April 10, 1998, the USPS awarded the contract to Sun.

In its amended complaint, HP alleges the following defects in the procurement process: (1) that the USPS failed to evaluate the proposals in accordance with evaluation criteria specified in the Solicitation; (2) that the USPS awarded the contract to a proposal that was technically noncompliant; (3) that the USPS improperly relaxed the Solicitation requirements; (4) that the USPS did not apply the evaluation criteria equally; (5) that the USPS's evaluation of HP's technical proposal was improper; (6) that the USPS failed to conduct meaningful discussions with HP; (7) that the USPS held improper discussions with Sun; (8) that the Contracting Officer engaged in auction techniques in violation of the Procurement Manual; (9) that the USPS did not treat the offerors equally during discussions; (10) that the USPS improperly leaked source selection information; and (11) that the USPS's "best value" determination was based on a flawed technical evaluation, inconsistent with the Solicitation, and otherwise unreasonable. Plaintiff asks the court to enjoin performance under the contract, declare the award invalid, require the USPS to terminate the contract with Sun, and either award the contract to HP or require the USPS to re-compete the award consistent with applicable legal requirements.

Sun's Motion to Intervene was allowed on May 5, 1998, and Sun immediately filed a Motion to Dismiss for Failure to State a Claim. Sun argues that this court does not have the power under 28 U.S.C. § 1491(b) to grant equitable relief in a bid protest action brought against the USPS, and in the alternative, that the court lacks subject matter jurisdiction over this action.

## DISCUSSION

■ All federal courts are courts of limited jurisdiction. They possess only that power specifically authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *See Willy v. Coastal Corp.,* 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). The jurisdiction of this court is particularly limited as it exists to hear claims against the United States. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). Waivers of sovereign immunity are to be narrowly construed in favor of the sovereign. *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951).

■ The Tucker Act waives the United States' immunity from suit with respect to the claims identified by the act. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). "If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit." *Mitchell,* 463 U.S. at 216, 103 S.Ct. 2961. The Tucker Act grants the court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States...." 28 U.S.C.A. 1491(a)(1) (West Supp.1998). This provision has been construed to allow the court to hear challenges

brought by disappointed bidders to proposed government contract awards alleging impropriety in the procurement process. *Central Arkansas Maintenance, Inc. v. United States,* 68 F.3d 1338, 1341 (Fed.Cir.1995); *CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1572–1573 (Fed.Cir.1983). Jurisdiction in such cases is premised on the existence of an implied contract between the government and the bidder "to have the involved bids fairly and honestly considered." *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983) (in banc); *See Central Arkansas,* 68 F.3d at 1341. If court finds that the government's bid-evaluation process was arbitrary and capricious, the government has breached this implied contract. *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203 (1974)

Federal district courts traditionally exercise jurisdiction over hid protests under the *Scanwell* doctrine. *See Scanwell Laboratories v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). In *Scanwell.* the Court of Appeals for the D.C. Circuit found that the Administrative Procedures Act gave disappointed bidders standing to challenge government contract awards. *See Id.* at 861–873.

Historically, this court's remedial powers were limited to " 'judgments for money found due from the government to the petitioner.' " *United States v. King,* 395 U.S. 1. 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (quoting *United States v. Alire,* 6 Wall. 573, 73 U.S. 573, 575, 18 L.Ed. 947 (1867)). The Federal Courts Improvement Act of 1982, expanded the court's remedial powers in pre-award bid protest actions:

> To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

28 U.S.C. § 1491(a)(3) (1994) (repealed by Administrative Disputes Resolution Act ("ADRA") of 1996, Pub.L. No. 104–320 § 12(a)(2), 110 Stat. 3874 (1996)). The purpose of this measure was to give this court the same power in pre-award bid protest actions that the district courts exercised under the Scanwell doctrine. *CACI,* 719 F.2d at 1574. The court's equitable power under 28 U.S.C. § 1491(a)(3) extended only to actions filed before the contract was awarded. *See John C. Grimberg Co.,* 702 F.2d at 1369.

In 1996, Congress enacted the Administrative Disputes Act of 1996, Pub.L. No. 104–320 § 12, 110 Stat. 3870, 3874–75 (1996). The act substantially expanded this court's bid-protest jurisdiction. For the first time, the court was empowered to hear post-award protests:

> (b)(1) Both the United [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C.A. § 1491(b)(1) (West Supp.1998). The ADRA also replaced the court's narrow power to provide equitable relief under 28 U.S.C. § 1491(a)(3), with a much broader mandate:

> To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

28 U.S.C.A. § 1491(b)(2) (West Supp.1998).

Sun presents two arguments to support its claim that the Postal Service is exempt from the equitable powers conferred by the ADRA. First, Sun argues that the court's power to grant equitable relief under 28 U.S.C.A. § 1491(b)(2) is limited, by section 1401(b)(1), to objections to a solicitation by a "Federal agency." Sun contends that the United States Postal Service is not a "Federal agency" under section 1491(b)(1). Second, Sun argues that the Postal Service is not

subject to the ADRA because 28 U.S.C.A. § 1491(h)(4) directs the court to apply the standard of review set forth in section 706 of the Administrative Procedures Act ("APA"), and the Postal Service is specifically exempted from the APA by 39 U.S.C. § 410(a) (1994).

## I. The USPS is a Federal Agency

The court concludes that the plain meaning of the Tucker Act gives this court the authority to review bid protests arising from USPS procurement decisions to ensure that the award was not arbitrary, capricious, or in violation of USPS regulations. The Tucker Act also clearly authorizes the court to "award any relief that the court considers proper, including declaratory and injunctive relief ... " 28 U.S.C.A. § 1491(b)(2).

Sun contends that in order to define the term "Federal agency," as used in the Tucker Act, the court must look at how that term is used in procurement statutes. In this case, the court is not persuaded that there is a need to look beyond title 28 to interpret the meaning of the Tucker Act.

> As used in this title:.... The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

28 U.S.C. § 451. This definition has been applied by the Court of Claims in *Butz Eng'g Corp. v. United States,* 204 Ct.Cl. 561, 499 F.2d 619, 624 (1974), to determine that the Postal Service was subject to the pre-ADRA Tucker Act, and by the Fifth Circuit in *Government Nat'l Mortgage Ass'n v. Terry,* 608 F.2d 614 (5th Cir.1979), to determine that the Government National Mortgage Association was an agency for purposes of 28 U.S.C. § 1345, which grants jurisdiction to the district courts to hear actions commenced by an agency of the United States.

■ Sun argues that if Congress intended to invoke the section 451 definition of agency, they would have used the term "agency" instead of "federal agency." While mindful of the principle that a statute should be construed to give meaning to every word, *see* IA SUTHERLAND STATUTORY CONSTRUCTION § 46.06, 119–120 (5th ed.1992), it is difficult to conclude that Congress intended to substantively modify the term "agency" with the word "Federal." This court clearly has no authority over non-Federal entities. *See United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Moreover, nothing in the Act's legislative history suggests that Congress intended to invoke a definition from another statute. Under the circumstances, the court concludes that use of the term "Federal agency" in the Tucker Act amounts to a redundancy. *See, e.g, United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1352 (4th Cir.), *cert. denied,* 513 U.S. 928, 115 S.Ct. 316, 130 L.Ed.2d 278 (1994).

■ Sun argues that even if section 451 is applied, the statutory context in which the term agency used clearly gives the term a more limited scope, that excludes the USPS. The court does not agree. In this case, the context referred to in section 451 is the Tucker Act, not unrelated federal procurement law. Nothing in the context of the Tucker Act suggests that "agency" was intended to be used in a more limited sense than suggested by 28 U.S.C. § 451.

Sun refers the court to the jurisdictional statutes under which the General Services Board of Contract Appeals ("GSBCA") formerly reviewed, and the General Accounting Office ("GAO"), currently reviews bid protest actions. Sun argues that use of the term "Federal agency" in these statutes strongly suggests that Congress intended "the term to have the same meaning, regardless of the forum in which a protest action was filed." (Sun's Mot. to Dismiss at 6).

Through the Postal Reorganization Act of 1970, Pub.L. No. 91–375, 84 Stat. 719 (codified as amended at 39 U.S.C. §§ 101–5605), Congress exempted the Postal Service from certain federal laws:

> Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of

the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service. 39 U.S.C. § 410(a).

In *United States v. Electronic Data Sys. Fed. Corp.*, 857 F.2d 1444 (Fed.Cir.1988), the Federal Circuit examined whether the Brooks Act, 40 U.S.C. § 759 (1988) (repealed in 1996) provided the GSBCA with jurisdiction to review a procurement decision by the Postal Service. The court found that 39 U.S.C. § 410(a) exempted the Postal Service from "all federal procurement laws not specifically enumerated, including the Brooks Act." *Electronic Data Sys.*, 857 F.2d at 1446. As a result, the GSBCA lacked jurisdiction over the USPS. *Id.*

In *Falcon Sys. Inc.* B–222549, 86–1 CPD ¶ 462 (1986), the GAO applied a similar analysis to conclude that it lacked jurisdiction over Postal Service procurement. The GAO's bid protest jurisdiction is defined by the Competition in Contracting Act ("CICA") of 1984, 31 U.S.C. § 3551 et seq. In *Falcon,* the GAO concluded that because the CICA was a federal procurement law not specifically enumerated by 39 U.S.C. § 410(a), the Postal Service was not subject to the GAO's jurisdiction. *Id.*

Sun argues that because the GAO and GSBCA lack jurisdiction, this court should similarly find that it is without jurisdiction. The court does not agree. While the Postal Service is clearly not subject to federal procurement laws such as the CICA and the Brooks Act, this court, unlike the GAO and GSBCA, does not derive its bid-protest jurisdiction from a federal procurement law. The Tucker Act is not a "Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets. or funds" and is not found within title 5. *See* 39 U.S.C. § 410(a). In exercising jurisdiction over the USPS, this court will review the procurement to determine if the USPS violated its Procurement Manual or the Solicitation. These regulations are clearly exempted from the scope of section 410(a). As a result, cases addressing the jurisdiction of the GAO

and the GSBCA are inapplicable to the Tucker Act.

Ultimately, Sun's argument is premised on the notion that the ADRA narrowed the scope of the court's jurisdiction. The ADRA's legislative history belies this notion. Under the pre-ADRA Tucker Act, the court regularly exercised jurisdiction over USPS procurement protests and was clearly empowered to grant equitable relief. *See International Mailing Sys. Div. Of Better Packages, Inc. v. United States,* 6 Cl.Ct. 762 (1984); *Mack Trucks, Inc. v. United States,* 6 Cl.Ct. 68 (1984). The legislative history of the ADRA clearly shows an intent to broaden this court's jurisdiction and to make that jurisdiction coequal with the district courts. *See* H.R. Conf. Rep. No. 104–841, at — (1996), 142 Cong. Rec. H11108–05, H11111 (daily ed. Sept. 25, 1996) (ADRA intended to "give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims;) 142 Cong. Rec. S11848–01, S11849–S11850 (daily ed. Sept. 30, 1996) (For 4 years, the consolidated jurisdiction w[ill] be shared by the Court of Federal Claims and the district courts. Each court system w[ill] exercise jurisdiction over the full range of bid protest cases previously subject to review in either system. After 4 years, the jurisdiction of the district courts w[ill] terminate, and the Court of Federal Claims w[ill] exercise exclusive jurisdiction over procurement protests.")

The court concludes that the plain meaning of the Tucker Act as amended by the ADRA confers jurisdiction on this court to hear protests challenging USPS procurement decisions and to grant equitable relief.

## II. ADRA and the APA

■ Sun argues that the court's postaward jurisdiction does not apply to the USPS because the ADRA invokes the APA and the USPS is specifically exempted from the APA by 39 U.S.C. § 410(a). Sun argues that the intent of the ADRA was to make this court and the district courts complementary forums, both procedurally and substantively. Sun contends that the ADRA codifies

*Scanwell* and notes that 28 U.S.C.A. § 1491(b)(4) specifically directs the court to apply the APA standards set forth in section 706 of title 5.

In *National Easter Seal Soc'y v. United States Postal Serv.,* 656 F.2d 754 (D.C.Cir. 1981). the Court of Appeals for the District of Columbia Circuit considered whether the Postal Service was subject to the APA's notice and comment requirements. *Id.,* 211 U.S.App.D.C. at 177. The court found that Congress intended 39 U.S.C. § 410(a) to exempt the Postal Service from the specified chapters of title 5, in which the APA is principally contained, not merely those provisions of the APA dealing with federal procurement. *Id.*

In *Concept Automation Inc. v. United States Postal Serv.,* 887 F.Supp. 6 (D.D.C. 1995), the court dismissed a bid protest filed against the USPS on the grounds that Postal Service procurement was not subject to judicial review in the district courts. *Id.* at 10. The court relied, in part, on the *National Easter Seal* holding that the USPS was exempt from the APA. As a result, the court concluded that it could not exercise *Scanwell* jurisdiction over the USPS, and therefore could not grant plaintiff the requested injunctive relief. *Id.*

Sun argues that if district courts are without authority to review USPS procurement decisions under *Scanwell,* this court is similarly without jurisdiction to review USPS procurement under the Tucker Act. The court does not agree. While the Postal Service is specifically exempted from the APA by 39 U.S.C. § 410(a), it does not follow that district courts are without jurisdiction to review USPS procurement decisions. *Compare Concept Automation, Inc. v. United States Postal Serv.,* 887 F.Supp. 6 (D.D.C. 1995) (district courts have no jurisdiction over Postal Service procurement), and *Tedesco v. United States Postal Serv.,* 553 F.Supp. 1387 (W.D.Pa.1983), *with Peoples Gas, Light & Coke Co. v. United States Postal Serv.,* 658 F.2d 1182, 1191 (7th Cir.1981) ("exemptions found in section 410 of the Postal Reorganization Act do not manifest a congressional intent to foreclose all judicial review" of alleged violations of USPS procurement regu-

lations), *Carter Chevrolet Agency, Inc. v. United States Postal Serv.,* No. 96–1673–C (W.D.Okla. Mar. 17, 1997) (calling the *Concept Automation* holding "contrary to the weight of authority"), *AT & T Corp. v. United States Postal Serv.,* No. 96–C–4573 (N.D.Ill. Mar. 24, 1997), *T & S Prods., Inc. v. United States Postal Serv.,* No. 94–896 (D.D.C. May 26, 1994), *Express One Int'l Inc. v. United States Postal Serv.,* 814 F.Supp. 93 (D.D.C.1993), *Express One Int'l Inc. v. United States Postal Serv.,* 814 F.Supp. 87 (D.D.C.1992), *Unisys Corp. v. United States Postal Serv.,* No. 89–331 (D.Del. Aug. 14, 1989), *and Donninger Metal Prods. Corp. v. United States Postal Serv.,* No. 83–2725 (D.D.C. Jan. 9, 1984). The district courts have generally concluded that "jurisdiction of a district court may be invoked to test the validity of a procurement decision made by the Postal Service pursuant to its regulations." *Peoples Gas,* 658 F.2d at 1192.

*The Concept Automation* court rejected the Seventh Circuit's reliance on the "common law presumption of judicial review" concluding that 39 U.S.C. § 410 expressed Congressional intent to exempt USPS procurement from judicial review. *Concept Automation,* 887 F.Supp. at 10. While there is clear disagreement among the federal district and circuit courts on this point, this court need not rely on the common law presumption of review to hear alleged violations of USPS procurement law. First, while the Tucker Act invokes the APA standard of review set forth in 5 U.S.C. § 706, the court does not apply the APA as a whole. As previously noted, the court's jurisdiction is dependant on the Tucker Act, not federal procurement law or the APA. As a result, 39 U.S.C. § 410(a) does not exempt the Postal Service from this court's jurisdiction. While this result may appear to be incongruous, it is consistent with the plain meaning of the relevant statutes.

In *Butz Eng'g Corp. v. United States,* 204 Ct.Cl. 561, 499 F.2d 619 (1974). the Court of Claims examined whether the USPS "numbers among those subsidiary instrumentalities for whose actions the United States, as principal, has renounced its own immunity."

*Butz,* at 622. The court reviewed a long line of cases examining the independence of federal agencies and corporations and noted that the analysis must focus on whether the USPS "was 'acting or professing to act, mediately or immediately, under the authority of the United States.'" *Id.* (quoting *In re Skinner & Eddy Corp.,* 265 U.S. 86, 95, 44 S.Ct. 446, 68 L.Ed. 912 (1924)). The court applied the following test:

> when a federal instrumentality acts within its statutory authority to carry out [the United States'] purposes, the United States submits itself to liability under the Tucker Act unless 'some specific provision to the contrary' exists.

*Butz,* 499 F.2d at 622 (quoting *National State Bank of Newark v. United States,* 174 Ct.Cl. 872, 357 F.2d 704 (1966)).

In *Butz* defendant conceded that the Postal Service was founded to serve a public interest and functions as an instrumentality of the Federal Government. The government argued that the Postal Reorganization Act exempted the Postal Service from pre-ADRA Tucker Act jurisdiction. The court noted that while Congress intended to make the Postal Service more efficient, more business-like, and more self-sufficient, no effort was made to divest the Postal Service of its public charter. The court observed that section 110(a) of the Postal Reorganization Act ordered the USPS to be operated as "a basic and fundamental service provided to the people by the Government of the United States." *Butz,* 499 F.2d at 624. The Postal Reorganization Act defines the USPS as "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. The court found this definition significant in that title 28 defines "agency" as including any "independent establishment" of the United States. *Butz,* 499 F.2d at 624. Finally, the *Butz* court was not persuaded that 39 U.S.C. § 410 was meant to limit this court's jurisdiction. Instead, the court found that section 410(a) referred to the Postal Service's discretion to contract according to its own needs and regulations.

While *Butz* involved a claim under the pre-ADRA Tucker Act, the analysis is significant in two respects. First, the court thoroughly analyzed the history of the Postal Reorganization Act and concluded that Congress did not intend to broadly exempt the USPS from Tucker Act jurisdiction. *See Butz,* 499 F.2d at 623–628. Second, the court applied section 451 to conclude that the Postal Service was an agency.

### III. Sun's Motion

Following this court's oral order, dismissing Sun's Motion to Dismiss, Sun moved for certification of the court's order denying the motion to facilitate an interlocutory appeal.[2] Sun's motion for certification is allowed. The court is of the view that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(d)(2).

### CONCLUSION

For the above-stated reasons, the court denies Sun's Motion to Dismiss for Failure to State a Claim pursuant to RCFC 12(b)(4) and denies Sun's alternative motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). The court concludes that bid protests against the United States Postal Service may be reviewed pursuant to 28 U.S.C. § 1491(b).

**IT IS SO ORDERED.**

---

**2.** Plaintiff's opposition to Sun's motion to certify is noted.